T. H. GULICK, Respondent, v. CHARLES B. CLARKE, Appellant.

**St. Louis Court of Appeals, November 9, 1892.**

1. **Highways:** NEGLIGENCE IN DRIVING. One who drives a vehicle through a crowded thoroughfare in a city is under the duty of being constantly watchful to avoid collisions with persons lawfully on the streets.

2. ———: ———: CONTRIBUTORY NEGLIGENCE OF PERSON INJURED. A person, lawfully engaged in such thoroughfare in the performance of an occupation which absorbs his attention, is required to exercise only such care to avoid injury from passing vehicles as is reasonable under the circumstances.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*Mills & Flitcraft*, for appellant.

*James W. Williams*, for respondent.

THOMPSON, J.—The plaintiff brought an action before a justice of the peace for damages for a personal injury alleged to have been received through the negligence of the defendant on the following statement:

"Plaintiff stated that on or about November 18, in the sixth district of the city of St. Louis, and state of Missouri, the defendant, by his wrongful act, caused plaintiff to suffer greatly in mind and body by his wrongfully, negligently and unlawfully driving his horse and buggy with great force against plaintiff, and thereby inflicting severe wounds upon the right face and side of plaintiff, whereby plaintiff was knocked down and left unconscious in a dangerous place, which caused plaintiff

to pay out large sums of money. Wherefore plaintiff sues defendant for his injury and damage for $300, and prays judgment for the same with his costs expended."

Ont rial *de novo* in the circuit court, the plaintiff recovered a verdict and judgment in the sum of $50, from which the defendant prosecutes this appeal, assigning for error that the court should have instructed the jury that, under the pleadings and evidence, the plaintiff was not entitled to recover, as prayed by the defendant, *first*, at the close of plaintiff's evidence, and, *secondly*, at the close of the whole case.

In considering this assignment of error we shall state, first, what the evidence disclosed without any contradiction, and then endeavor to state the points wherein it was contradictory. The evidence showed, without contradiction, that two street railways cross each other at right angles at the intersection of Broadway and Olive streets, in the city of St. Louis; that the cars of both these lines are propelled by underground cables; that the plaintiff was employed by the Missouri Railroad Company, which operates the Olive street line, to stand at the intersection of these two railways and to flag approaching trains for the purpose of preventing collisions; that, while engaged in this duty, he was hurt by coming in contact with a buggy driven by defendant; and that the manner in which he was hurt consisted in his back being brought into contact with some part of the buggy, in consequence of which he fell forward upon his face on the granite pavement and one of the iron rails, so that he received severe contusions, both on his back and face.

As to the manner in which he came in contact with the defendant's buggy the evidence was conflicting, and some of it obscure; but enough of it was clear for the purpose of taking the case to the jury. Dr. Brokaw, who attended the plaintiff in consequence of

his injuries, testified that his injuries consisted of a general bruising up of the side of his face, and some injuries to his back. He described the injuries to his back as having been received "on the right side in the region of the lower ribs." He thought there was some bruising about his face, "but the principal injury was on the back and side." "He was just generally bruised up; some injuries to the back, the back a little black and blue, and his face scratched up. He had been thrown down on the granite pavement and bruised up; a good deal of pain, and suffered a good deal with his side."

The plaintiff himself stated that, while stationed as flagman at the intersection of the two street railways, and while standing there, somewhere about the crossing near the south track of the Olive street line, he gave a signal to the gripman of a car coming down Broadway to go ahead; and that, while he (the plaintiff) was walking east to get out of the way and let the car go by, and was walking backwards and forwards, all at once something struck him in the back and knocked him headlong over upon his face. The streets were not crowded at the time. The court ruled out, on objection of the defendant, questions put to this and other witnesses of the plaintiff, as to whether there was room for the defendant to drive past the plaintiff without running over him; but the defendant's own evidence showed that there was room. The plaintiff testifies that he did not see the horse and buggy before he was struck, otherwise he would have got out of the way. "It struck me somewheres about the small of the back; about the short ribs."

Hon. A. A. Paxson, a witness called for the plaintiff, a member of the bar and judge of the second district police court of St. Louis, testified that he was standing on the southeast corner of Broadway and

Olive when the accident happened. The first thing he saw was a man going over rapidly eastward with his arms spread out and in a headlong position. The man fell sprawling in the street. The witness saw that a horse and buggy had come in collision with him, and had knocked him in that way. The witness identified the plaintiff as being the man whom he thus saw thrown down. The witness testified that he, with a police officer, assisted the plaintiff to get up. He further stated: "He fell just as anyone would after being *violently* struck; he fell with his hands out this way [indicating]; he fell with his face downward, I think; * * * I did not notice who it was that was driving at all." He testified, but rather as a conclusion than otherwise, that, from the manner in which he saw the plaintiff precipitated forward and the horse with its head jerked up, either the horse or the shafts of the buggy had struck the plaintiff; but he could not say positively that he saw the horse strike him. "The first thing that attracted my attention was the man going this way and falling." On the whole, the substance of the testimony of this witness was that he did not see the actual contact, but that his eye caught the man when he was falling, after being brought in contact with something.

Mr. Overton, another witness for the plaintiff, testified that he was a gripman on the Broadway line and remembered the accident. He said: "I saw a buggy knock this man down, as I was coming south. The buggy was going east on Olive street. I was going south on Broadway. * * * He flagged me across the track, and he stepped to one side for me to go by, and the buggy passed down and ran against him, and knocked him down. * * * It looked to me that he was struck in the back. His back was to the buggy. It looked to me as though he was struck in the back; struck along somewhere in the back—knocked him on

his face. He fell out across the tracks on his face.
* * * Mr. Clarke was in his buggy on Olive street.
*Q.* What was it, then, that struck Mr. Gulick in the
back? *A.* I could not say positively whether it was
the wheel or a shaft." This witness was allowed to
testify, without objection, that there was plenty of
room for Mr. Clarke to go around. The condition of
the street was, that the witness' car was there on
Broadway, and there was another car coming up
Broadway near Pine, and Mr. Clarke's buggy was
right on the Olive street crossing; his was the only
vehicle on the crossing; there was nothing in his way
at all. "He never made no attempt to stop his horse
until after he had struck the man and knocked him
down, and then he stopped his horse. *Q.* When
Mr. Clarke stopped his horse, what did he do then?
*A.* He just sat there in his buggy and turned around
this way [indicating], and looked over to where the
man was." The extent to which the cross-examination
of this witness shook his testimony, if any, presented
only a question for the jury as to the degree of credit
to be attached to it.

Police Officer Farley was also a witness of the
accident. He was on duty at the time at that place.
He testified: "I was crossing Broadway going east,
and this man was stationed on the crossing signaling
for cars to pass, as a signaler to them both on the
Broadway and the Olive street line. He signaled
the car going south, I think, on Broadway; and he was
walking east, as I was, and I looked over my shoulder
and saw him fall on the street, with a horse and buggy
immediately over him." The officer admitted that he
did not see the horse or buggy strike him. "He fell
on the pavement just on his hands and face; was pre-
cipitated on the street, on the pavement, with this
horse and buggy over him that Mr. Clark was driving."

The only testimony for the defendant was that of the defendant himself. His testimony would probably, if believed by the jury, have exonerated him from blame. He said: "I was coming east on the south track of the Olive street road. I was coming in a slow gait, and before reaching the track I looked ahead to see if there was anyone on the track. I looked north, and I saw one Broadway car on Broadway near Locust, and there was one Broadway car near Pine street; and I was about to cross the track and there was a gentleman coming up Broadway on the east track of Broadway—

"The court: With a team? A. Yes, sir, it was like a painter's vehicle.

"Q. He had some vehicle? A. Yes, sir, we were both coming at the same gait, slow gait. I was about ten feet in advance of this man, nearly on the Broadway crossing, and I crossed the west track on Broadway and stopped still, and the man coming up this way; he was ten feet further back, and I could have passed and crossed him without striking him, in other words, on the right track.

"Q. Why did you stop? A. Because I wanted to give him the precedence, if he chose to take it. I would not run any risk, and I stopped on the west track of the Broadway line, and he came slowly about ten feet south of the south track of the Olive street line. I was perfectly still. Then I started up, and had not got out of a walk,—my horse was not out of a walk at the time this accident occurred. This man [meaning the plaintiff] seemed to have jumped back against me. I do not know whether he hit the breast of the horse or how, but he fell. I was not going out of a walk at the time this accident occurred. I had not started, or I had not gone three feet from the place where I was."

Further on he testified that, instead of a fall, the plaintiff "appeared to stumble more than anything else. He gave a jump to the north and then went down like a brick, and then, when he gave the second jump, there is where he hurt his face." On cross-examination he stated: "I did not see him. I stopped here and I started up, and I had started about three feet when this man walked up against my horse."

It is almost too plain for discussion that this evidence presented a case for the jury, both as to the negligence of the defendant and any supposed contributory negligence of the plaintiff. We have here a very clear image of a case, where a man is placed at the intersection of two cable street railways to warn the approaching trains in order to prevent them from colliding with each other, and it may also be supposed for the purpose of preventing them from colliding with approaching vehicles. Although the judge refused to allow several witnesses to testify that it was necessary for the public safety to have such a flag-man at that place, it can easily be concluded that it was a necessity, or, at least, a proper precaution on the part of the railway company that so employed the plaintiff, having due regard for the safety of the public. But it is sufficient to say that there is no testimony in the record tending to show that he was not lawfully and properly there, engaged in the performance of a lawful and proper duty. This duty required him to look alternately and with an active vigilance in four different directions, east, west, north and south, to observe the approach of trains and flag them in case of danger. While engaged in this duty, which, it may easily be concluded, must to some extent have absorbed his faculties, he is, according to the testimony adduced by himself and his witnesses, struck from behind by the defendant's horse and buggy and thrown forward upon his face against the iron rail

and granite pavement, sustaining severe contusions both on the back where he was struck by the horse or vehicle, and on his face where it came in contact with the pavement. The situation was analogous to the situation of a track repairer on a railroad, who, when absorbed in his duties, fails to observe an approaching train, under the reasonable expectation that some signal will be given which will enable him to get out of the way in time to escape injury. In such cases, while the person in the position of danger is not absolved from exercising reasonable care to promote his own safety, yet from the very nature of his situation the care that he can bestow is not equal to that which can be bestowed by the person who is driving forward the instrument of danger toward the point of contact with him. In this case the defendant was driving what must be regarded as an instrument of danger in a crowded thoroughfare in a city, and was, hence, under the duty of a constant watchfulness to avoid collisions with persons and vehicles lawfully on the street. It was for the jury to say, whether, if he had exercised that reasonable care which the law put upon him under such circumstances, he would have come in contact with the plaintiff in the manner shown by all the evidence. It was also for the jury to say whether the explanation of the accident given by him on the witness stand, that, instead of his running upon the plaintiff, the plaintiff backed or threw himself upon him, was to be credited. Even if the plaintiff had been negligent in not maintaining an adequate watchfulness for the purpose of keeping out of the way of passing vehicles, this would not necessarily have deprived him of his right to recover; for in that case, if the defendant saw him, or might, by the exercise of reasonable care have seen him, in time to have averted

the accident, it would have been culpable negligence if he had failed to do so.   In other words, the rule of law which protected the ass of Davies (*Davies v. Mann*, 10 Mees. & W. 545), the oysters of Brooke (*Mayor v. Brooke*, 7 Ad. & Ell. [N. S.] 339), the hogs of Kerwacker (*Kerwacker v. Railroad*, 3 Ohio St. 189), and the wood-boat of Adams (*Adams v. Ferry Co.*, 27 Mo. 95) was adequate to protect the plaintiff, although he may have been negligent in exposing himself to danger. *Kelly v. Railroad*, 95 Mo. 279, 284.  On the other hand, if, according to the defendant's testimony, the plaintiff recklessly backed or threw himself against the defendant's vehicle, then his own negligence may have been the proximate cause of the injury, under the rule of the leading case of *Butterfield v. Forester*, 11 East, 60.   The principle of that case is that, although B has negligently placed an obstruction in the highway, yet, if A by negligent driving precipitates himself against it and gets hurt, he cannot recover damages of B.   So here, although the defendant may have been driving negligently and without taking due care for the safety of the plaintiff, yet if the plaintiff negligently backed or precipitated himself on the defendant's vehicle, his and not the defendant's negligence was the proximate cause of the injury.   But this excuse, offered by the defendant, necessarily presented a question for the jury, and they by their verdict have determined it against him.

We, therefore, conclude that the case was properly submitted to the jury, and the judgment is accordingly affirmed, with the concurrence of all the judges. ROMBAUER, P. J., concurs in the result only.